Daniel F. McCARTHY, etc., Plaintiff,

v.

PAINEWEBBER, INC., et al., Defendants.

No. 85 C 3328.

United States District Court, N.D. Illinois, E.D.

June 12, 1989.

Arthur M. Holtzman, Donald J. Moran, Anita K. Modak–Truran, Pedersen & Houpt, Chicago, Ill., for plaintiff.

Michael B. Roche, James D. Adducci, Schuyler, Roche & Zwirner, Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Daniel McCarthy ("McCarthy"), doing business as McCarthy Cattle Company, has sued PaineWebber, Inc. ("PaineWebber") and Thomas Downs ("Downs") on a myriad of claims. In addition to charging both defendants with violations of the Commodities Exchange Act ("CEA"), 7 U.S.C. §§ 1–26, McCarthy asserts several pendent claims: Illinois common law fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Act"), breach of contract and negligence.

Now—nearly four years after first bringing suit—McCarthy has filed a motion under Fed.R.Civ.P. ("Rule") 15(a) to allow

further amendments to his Third Amended Complaint ("TAC"). According to his own characterization (P. Motion To Amend 1), his proposed Fourth Amended Complaint ("FAC") "add[s] an additional count on Churning (April, May and June 1983), and claims for prejudgment interest; and withdraw[s] the cause of action asserted in Count Two [of the TAC]—unauthorized trading [while] retaining Count Two's factual allegations." For the reasons stated in this memorandum opinion and order, only the lesser part of the proposed amendment is allowed.

### Procedural History

McCarthy filed his original complaint April 9, 1985, based on activities that had occurred roughly two years earlier (between December 1982 and June 1983) in a commodities trading account handled by PaineWebber and Downs. Essentially McCarthy claimed defendants (1) had misrepresented both the way the account would be handled and the account's prospects for making money and (2) had cheated and defrauded McCarthy in the process. Three amended pleadings followed: an Amended Complaint filed May 30, 1985, a Second Amended Complaint filed June 22, 1987 and the TAC filed November 15, 1988 (the latter adding a negligence count).

As always with cases on its calendar, this Court monitored the progress of discovery by a periodic series of status hearings, ultimately setting the close of discovery at a date that both sides' counsel confirmed would provide ample time for that purpose (in this instance December 30, 1988). During the course of discovery defendants had deposed both McCarthy and his securities law expert. Again consistently with this Court's regular practice, the filing of a final pretrial order ("FPTO") was scheduled shortly after the close of discovery (the FPTO was timely filed on February 22, 1989), promptly followed by a final pretrial conference (held February 27). In accordance with this Court's invariable practice when such a conference confirms the FPTO is in proper form and reflects the case's full readiness for trial, the action was then given its appropriate priority on the trial calendar.[1]

Two weeks later McCarthy moved to amend his complaint once again. Among other changes the proposed FAC would add a count alleging churning in McCarthy's account during 19 days in April 1983, 16 days in May 1983 and 6 days in June 1983. Although TAC Count Three already contains a churning claim, it involves only one day in May and one day in June.[2] McCarthy's proposed new churning count seeks an additional $63,000 in damages (corresponding to PaineWebber's commission for the alleged churning transactions).

### Application of the Relevant Standards

Rule 15(a) permits a party to amend a pleading once as a matter of course before service of a responsive pleading, then adds:

> Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Under the circumstances the last-quoted clause of course controls the current motion.

 Inasmuch as D. Mem. 4 informally consents to the amendments involving the new prejudgment interest claim and

---

1. With rare exceptions where special circumstances require different treatment, this Court schedules civil cases for trial in the sequence in which they have reached the FPTO stage. By definition, then, some time lag must always exist between the FPTO's filing and the date of trial, and the priority mandated for criminal trials by the Speedy Trial Act (18 U.S.C. §§ 3161, 3162 and 3164) also necessarily renders the length of that gap somewhat unpredictable. But it should be obvious that the mere existence of such a time lag cannot support a party's freedom to keep changing the shape of a lawsuit and thus forcing further delays in priority, else Zeno's Paradox would operate to prevent the litigation arrow from ever reaching the ultimate target of trial.

2. TAC Count Five also contains a churning claim for certain days in March 1983. Both the Count Three and Count Five claims have been in this lawsuit from the very beginning (the original Complaint filed in April 1985 included the same allegations).

withdrawal of count 2, and because those changes do not affect the case's readiness for trial, those amendments will be allowed as a matter of course. This opinion need address only the objected-to amendment—the new churning count.

Trial courts are given broad discretion as to whether to grant leave to file amended pleadings under Rule 15(a) (*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971)). But the liberal approach mandated by the Rule's standard ("freely given when justice so requires") reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities (*Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir.1977), citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 143 (7th Cir. 1961)).

McCarthy seeks to invoke the *Fuhrer* generalization quoted in *Stern, id.*:

> Leave to amend should be freely given unless it appears to a certainty that plaintiff would not be entitled to any relief under any state of facts which could be proved in support of his claim.

That standard may well dictate the result when a plaintiff is amending a complaint that failed in its original attempt to state a claim (the situation discussed in *Stern*). But other factors obviously come into play where, as here, a plaintiff belatedly attempts to add new claims based on newly-asserted (though previously-known) facts. As *Feldman v. Allegheny International, Inc.*, 850 F.2d 1217, 1225 (7th Cir.1988), citing *Textor v. Board of Regents*, 711 F.2d 1387 (7th Cir.1983), recently re-emphasized:

> Leave to amend may be denied when it would prejudice the parties or cause undue confusion or delay in the litigation.

P.R.Mem. 4 argues that delay *alone* may not justify denying a motion to amend—prejudice to the nonmovant must also be shown. But on that score the seminal teaching is that in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (emphasis added):

> In the absence of *any* apparent or declared reason—*such as undue delay,* bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

Thus "undue delay" and "undue prejudice" are stated in the disjunctive rather than the conjunctive, and the clear sense of *Foman* is that a distinction must be made between delay and *undue* delay. *Tamari v. Bache & Co. (Lebanon S.A.L.)*, 838 F.2d 904, 909 (7th Cir.1988) has observed insightfully that although a great many cases cite the truism that delay alone is not enough, "the longer the delay, the greater the presumption against granting leave to amend"—a longer delay increases the likelihood that such delay is inexcusable and that granting leave would further delay the suit and "impair the public interest in the prompt resolution of legal disputes." *Tamari, id.* concluded that if extreme, "delay itself may be considered prejudicial." This Court has previously found that undue delay in proposing amendments may alone be sufficient reason to deny leave to amend (see *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 658 F.Supp. 781, 786 (N.D.Ill.1987)).

Here nearly four years have elapsed between the original Complaint and the motion for leave to file the FAC—and the amended claim relates to events that occurred a full *six* years ago! Knowledge of the transactions alleged in the FAC to reflect churning was surely in McCarthy's possession shortly after they occurred. Nor is this a situation in which churning is a concept that has just come to McCarthy's attention—as already stated, the existing pleading has already asserted such a claim.

█ McCarthy offers no valid reason for not asserting the new claims earlier. Instead P.Mem. 2 somewhat disingenuously says the real issues of the case have now been discovered through *defendants'* deposition of McCarthy's securities expert! It is hardly defendants' responsibility to clarify facts already in McCarthy's possession so that he or his lawyer may better under-

stand his causes of action. McCarthy should have asserted any claim based on the complained-of transactions when they became known to him. Were he to file a new suit based on those transactions today, he would find himself time-barred and out of luck (see 7 U.S.C. § 25(c), imposing a two-year limitations period on private causes of action accruing under the CEA after January 11, 1983). Under the circumstances here McCarthy does not merit the relation-back benefits of Rule 15(c), given the extraordinary delay involved and the case's readiness for trial.

If McCarthy were instead merely suggesting that defendants have had an opportunity for full discovery on the issues in the added churning claim, that too is disingenuous. For analytical purposes churning may be looked at in the terms stated by this Court in *Griswold v. E.F. Hutton & Co.*, 622 F.Supp. 1397, 1407 (N.D.Ill.1985):

> Churning is a broker's trading for the purpose of generating commission fees without regard to the client's investment objectives. *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417, 435 (N.D.Cal.1968), *aff'd as modified*, 430 F.2d 1202 (9th Cir.1970) stated the classic definition:
>
> > Churning cannot be and need not be, established by any one precise rule or formula. The essential question of fact for determination is whether the volume and frequency of transactions, considered in the light of the nature of

the account and the situation, needs and objectives of the customer, have been so "excessive" as to indicate a purpose of the broker to derive profit for himself while disregarding the interests of the customer.

Although defendants have had ample opportunity to depose plaintiff and his expert as to his "needs and objectives," that is not enough. All the transactions must be "considered in the light of the nature of the account and the situation" of the customer as well. Whether each transaction was authorized by McCarthy and what McCarthy thought or did afterwards about each transaction is clearly relevant to a churning claim.

Nothing in the existing TAC put defendants on notice of the specific transactions sought to be put at issue in the new claim. Hence they cannot be said to have completed adequate discovery. P.R.Mem. 2 tacitly admits that by noting that during discovery defendants did in fact inquire about *some* (but by no means *all*) of the trading newly sought to be placed in issue now.[3]

There is thus no question that additional discovery would be required on the new claim. That would necessarily mean a delay in the trial, which had been anticipated to take place this summer or fall.[4] Though the added discovery might not be extraordinary in scope, the resulting trial delay could well be highly disproportionate to the delay involved in the discovery alone.[5] In

---

**3.** Somewhat bizarrely, P.R.Mem. 2 also quotes McCarthy's response to a request to admit:

> Mr. Daniel F. McCarthy cannot identify any specific trades made in the McCarthy Cattle Company account at PaineWebber, Inc. which he claims were made without his prior knowledge and approval, other than those trades he has previously identified at his deposition.

At best this Court fails to see how that proves no new discovery is necessary. At worst the statement sounds like an admission that the new claim may be, in part or in its entirety, frivolous and baseless.

**4.** Added complexity in scheduling for trial is involved in a case such as this, which the parties have estimated as requiring three weeks to try. Because jurors are called to serve in this district for roughly month-long periods beginning with the first Monday of each month, this Court always sets protracted trials to begin just after

that first Monday (thus minimizing the prospect that a juror's service will extend well beyond the month for which he or she is required to serve). That lesser flexibility for the longer trial necessarily modifies the strict priority system adverted to in n. 1. In any event, the time spent in the briefing and decision of the current motion has (of course) already affected the case's trial setting somewhat.

**5.** As already explained in n. 1, other cases that have newly reached the close-of-discovery-and-FPTO stage after this one have properly been placed on lower rungs in the litigation ladder establishing priority for trial. But if a meaningful reopening of discovery here were forced by McCarthy's proposed new amendment, this Court's view of proper calendar management and fairness to other litigants would demand that such other cases—plus any other cases that arrive at the same stage of readiness for trial

all events, the situation must be dealt with in light of the fact that McCarthy now seeks to sue on facts known years ago. This Court finds both the statement and logic in *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 19–20 (1st Cir.1979) (citations omitted) persuasive (though not of course binding):

> [W]here, as here, a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some "valid reason for his neglect and delay."

See also *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982).

McCarthy has failed to meet that burden in any way—he has given no reason for waiting until discovery had closed, the FPTO had been filed, the final pretrial conference had been held and only the actual setting for trial remained. That kind of timing is the hallmark of undue delay where (as here) defendants must return to prepare additional discovery and defenses.

*Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.1985) has affirmed a denial of leave to amend where plaintiff had waited a year to seek such leave after discovery had closed and the FPTO had been entered, and no reason was offered for the undue delay.[6] *Knapp, id.* noted that granting leave would clearly prejudice defendants who had invested a year preparing their defenses without notice of the new claim. Other cases from our Court of Appeals reflecting similar facts and results include *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir.1987) (amendment filed with no explanation after discovery closed, requiring additional discovery); *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 912 (7th Cir.1973) (amendment filed with no explanation two years after plaintiff's knowledge of the facts, requiring additional discovery and new FPTO). This Court has reached the same conclusion on similar facts in *Excalibur Oil, Inc. v. Sullivan*, 659 F.Supp. 1539, 1549 (N.D.Ill.1987), where plaintiff was found guilty of undue and inexcusable delay in waiting two years to amend and "provided not a single attempted justification for its delay," even though it was aware of the facts before the original filing. McCarthy must be viewed as equally guilty of undue and inexcusable delay in waiting four years to file his additional churning claim.

## Conclusion

McCarthy is granted leave to add his claim for prejudgment interest and to withdraw his claim for unauthorized trading. Leave to add his new churning claim is denied.

This case is set for trial (in accordance with the priority principles stated in nn. 1 and 4) at 9:45 a.m. October 4, 1989. All remaining pretrial procedures will conform to the following timetable:

1. Any motions in limine and supporting memoranda must be filed 28 days before trial, with responsive memoranda due 14 days before trial.

2. Trial briefs, jury instructions (jointly prepared if at all possible) and voir dire questions must be filed 21 days before trial.

---

before discovery in this case is *truly* completed—should occupy higher rungs on the priority ladder. Any other treatment would improperly reward a litigant such as McCarthy for his unjustified delay in the tardy assertion of a claim that forces the new discovery (while penalizing defendants such as PaineWebber and Downs, who are also entitled to earn repose by having the claims on which they are being sued brought to trial as promptly as possible). Moreover, *any* delay caused by reopened discovery (whether or not the principle just explained is to be followed) creates the risk of a far greater delay forced by the interposition of a newly-brought criminal case whose early trial date is

compelled by the Speedy Trial Act. As this Court regularly tells lawyers when it sets a civil case trial date at a post-FPTO pretrial conference:

> Your trial date is firm, subject to the possibility that it may be preempted by a criminal case that hasn't yet reached indictment.

And much the same caveat is contained in this Court's standard minute order used to set the trial date for a civil case that has reached the same stage.

6. Denials of leave to amend are reviewed on the lenient abuse-of-discretion standard (*Feldman*, 850 F.2d at 1225).