884 F.2d 709
 132 L.R.R.M. (BNA) 2331, 112 Lab.Cas. P 11,439,
6 Indiv.Empl.Rts.Cas. 510,
1989 O.S.H.D. (CCH) P 28,654
 TRANSPORT WORKERS' UNION OF PHILADELPHIA, LOCAL 234,
Appellant in No. 88-1206,
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,
Appellant in No. 88-1160.
TRANSPORT WORKERS UNION OF AMERICA, LOCAL 2013
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY
and
Louis F. Gould, Jr., Esquire, Individually and in his
official capacity as Chairman of the Board of SEPTA; Robert
J. Thompson, Individually and in his official capacity as
Vice Chairman of the Board of SEPTA; Brian W. Clymer;
Judith E. Harris, Esquire; Mary C. Harris; Thomas M.
Hayward, C.P.A.; Frank W. Jenkins, Esquire; Richard E.
Kutz, Esquire; David W. Marston, Esquire; James C. McHugh
and Franklin C. Wood, Individually and in their official
capacities as Members of the Board of SEPTA, Appellants.
BROTHERHOOD OF LOCOMOTIVE ENGINEERS, DIVISION 71 and
Brotherhood of Locomotive Engineers and Thomas C.
Brennan, Appellants in No. 88-1207,
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY
and
Louis F. Gould, Jr., Esquire, Individually and in his
official capacity as Chairman of the Board of SEPTA; Robert
J. Thompson, Individually and in his official capacity as
Vice Chairman of the Board of SEPTA; Brian W. Clymer;
Judith E. Harris, Esquire; Mary C. Harris; Thomas M.
Hayward, C.P.A.; Frank W. Jenkins, Esquire; Richard E.
Kutz, Esquire; David W. Marston, Esquire; James C. McHugh
and Franklin C. Wood, Individually and in their official
capacity as Members of the Board of SEPTA, Appellants in No.
88-1162.
UNITED TRANSPORTATION UNION, Brotherhood of Railway, Airline
and Steamship Clerks, Freight Handlers, Express and Station
Employees, Brotherhood of Maintenance of Way Employees,
Brotherhood of Railroad Signalmen, Appellants in No. 88-1208,
v.
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,
Appellant in No. 88-1163.
 Nos. 88-1160, 88-1206, 88-1161, 88-1162, 88-1207, 88-1163
and 88-1208.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 30, 1988.
Decided Dec. 22, 1988.
On Remand From The Supreme Court of the United States June 26, 1989.
Opinion Sept. 1, 1989.
 
 John F. Smith, III, Richard S. Meyer, Hope A. Comisky, James J. Rodgers, Barbra Shotel, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Southeastern Pennsylvania Transp. Authority.
 Michael Brodie, Michael R. Kopac, III, Sacks, Basch, Brodie & Sacks, Philadelphia, Pa., for Transport Workers' Union of Philadelphia, Local 234.
 Harold A. Ross, Joseph E. Prekop, Ross & Kraushaar Co., L.P.A., Cleveland, Ohio, Cornelius C. O'Brien, Jr., Cornelius C. O'Brien, III, Cornelius C. O'Brien, Jr., P.C., Philadelphia, Pa., for Brotherhood of Locomotive Engineers, Div. 71, Thomas C. Brennan, Brotherhood of Locomotive Engineers, United Transp. Union, Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Express and Station Employees, Brotherhood of Maintenance of Way Employees, Brotherhood of Railroad Signalmen.
 Before SLOVITER, GREENBERG and COWEN, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 We consider this case on remand from the Supreme Court in light of two cases it decided last term in the rapidly developing area of constitutional and statutory law regarding employee drug testing. In our opinion in Transport Workers' Union of Philadelphia v. Southeastern Pennsylvania Transportation Authority (SEPTA), 863 F.2d 1110 (3d Cir.1988), we upheld SEPTA's program for random drug and alcohol testing of operating employees holding safety sensitive positions within SEPTA's mass transit system, but struck down return-to-work testing as insufficiently justified. The final design of SEPTA's random testing program had been developed after extensive review and modification by the district court, see id. at 1113-14, and we concluded that this program met the "reasonableness" standard enunciated by the Supreme Court in its recent case law under the Fourth Amendment, id. at 1124. One of the affected unions, the United Transportation Union (UTU), filed a petition for a writ of certiorari from this portion of our holding.
 
 
 2
 In a separate part of our opinion, we concluded that SEPTA's institution of a random drug and alcohol testing program for employees covered by the Railway Labor Act (RLA), 45 U.S.C. Sec. 151 et. seq. (1982), violated the employer's duties under sections 5 and 6 the RLA, 45 U.S.C. Secs. 155 & 156, to submit to the extensive notice, mediation and conciliation procedures required for resolution of "major" disputes. 863 F.2d at 1122. We therefore upheld the district court's issuance of a "status quo" injunction against SEPTA. In so holding, we found dispositive our precedent in Railway Labor Executives' Association v. Consolidated Rail Corp., 845 F.2d 1187 (3d Cir.1988). SEPTA filed a petition for a writ of certiorari.
 
 
 3
 On June 26, 1989, the Court granted the UTU's petition for certiorari, vacated our judgment, and remanded for reconsideration in light of Skinner v. Railway Labor Executives' Association, --- U.S. ----, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). See --- U.S. ----, 109 S.Ct. 3209, 106 L.Ed.2d 560. On the same day the Court also granted SEPTA's petition for a writ of certiorari and remanded for further consideration in light of its opinion in Consolidated Rail Corp. v. Railway Labor Executives' Association, --- U.S. ----, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), reversing our opinion on which we had relied. See --- U.S. ----, 109 S.Ct. 3208, 106 L.Ed.2d 560.
 
 
 4
 We have solicited the views of the parties and we will now consider in turn the effect of the Court's opinions in Skinner and Consolidated Rail on our prior judgment.[1]
 
 II.
 
 5
 In Skinner, the Court considered the permissibility under the Fourth Amendment of regulations promulgated by the Federal Railroad Administration mandating blood and urine tests for alcohol and drugs of employees involved in major train accidents and authorizing breath and urine tests of employees found to have violated safety rules.
 
 
 6
 The Court acknowledged that it "usually required 'some quantum of individualized suspicion' before concluding that a search is reasonable," but held that individualized suspicion need not be present in certain limited circumstances where sufficiently weighty interests of the government outweighed employees' privacy interests. Id. 109 S.Ct. at 1417 (citation omitted). With respect to the degree of intrusion on the workers' legitimate expectations of privacy, the Court acknowledged that "some of the privacy interests implicated by the toxicological testing at issue reasonably might be viewed as significant in other contexts," but found that employees' justified expectations of privacy were diminished in light of "logic and history" in the railroad employment context. Id. at 1419. It found, "[b]y contrast, the government interest in testing without a showing of individualized suspicion is compelling. Employees subject to the tests discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." Id.
 
 
 7
 In a companion case decided the same day, the Court upheld on similar grounds the "automatic" testing of applicants for transfer or promotion to certain customs positions. National Treasury Employees Union v. Von Raab, --- U.S. ----, 109 S.Ct. 1384, 1393, 103 L.Ed.2d 685 (1989). The Court vacated the portion of the lower court's order which upheld testing of customs employees applying for positions in which they would handle classified information because it appeared that this testing program might be overbroad with respect to the job positions covered. In spite of the lack of evidence of any drug use problem among customs employees, however, the Court found constitutionally permissible the testing of all employees seeking promotion or transfer to positions in which they would either be directly involved in drug interdiction or would carry firearms "[i]n light of the extraordinary safety and national security hazards" created by appointment of drug users to those positions. Id. 109 S.Ct. at 1395.
 
 
 8
 In the case before us, SEPTA presented extensive evidence of a severe drug abuse problem among its operating employees, which had been linked to accidents involving injuries to persons and which SEPTA's prior suspicion-based program had proved insufficient to curtail. See 863 F.2d at 1119-20. We found that in light of, inter alia, this evidence of a serious safety hazard caused by employee drug use, the careful tailoring of the program to cover only employees in safety-sensitive positions, and the existence of random selection procedures to protect against abuse of discretion by implementing officials, SEPTA's program was constitutionally permissible.
 
 
 9
 The Union argues in its letter to this court that Skinner is distinguishable because the random testing involved here is not based on any suspicion of drug impairment and therefore unlike the situation posed by Skinner where "one or more members of a railroad operating crew involved in an accident have a reasonable chance of being impaired or a user." However, in Skinner, the Court made it "clear ... that a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable." 109 S.Ct. at 1417. Moreover, in Von Raab the Court upheld testing directed at all applicants to the covered positions, without limitation to those as to whom there was an individualized suspicion. We therefore see no reason to deviate from our original holding that the random testing program at issue here is constitutionally justified in spite of its lack of a basis in "individualized suspicion." We stress again, as we did in our earlier opinion, that we reach this holding only in light of the special circumstances and extraordinarily compelling government interest involved in testing railway operating personnel who "can cause great human loss before any signs of impairment become noticeable to supervisors or others." Skinner, 109 S.Ct. at 1419.
 
 III.
 
 10
 We turn now to the Railway Labor Act issue presented by the remand pursuant to SEPTA's petition for certiorari. In Consolidated Rail, --- U.S. ----, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), the Court reversed this court's holding that the addition of urinalysis drug screening to the periodic physical examinations given Consolidated Rail (Conrail) employees constituted a major dispute under the RLA. See Consolidated Rail, 845 F.2d 1187. The Court acknowledged that "the question [was] a close one," id. 109 S.Ct. at 2479, but held that the dispute concerning the implementation of the drug testing program was "minor," and thereby referable to the exclusive jurisdiction of the arbitral board. The Court stated:
 
 
 11
 We hold that if an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (i.e., the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.
 
 
 12
 Id. at 2484.
 
 
 13
 The Court found that in light of Conrail's previous urinalysis testing of employees for blood sugar and albumin and its introduction of new medical testing technologies over the years without consultation with the unions, Conrail's "interpretation of the range of its discretion as extending to drug testing is supported by the general breadth of its freedom of action in the past, and its practice of including drug testing within routine medical examinations in some circumstances." Id. at 2487-88. The Court also concluded, "[f]or the limited purpose of determining whether Conrail's claim of contractual right to change its medical testing procedures must be rejected as obviously insubstantial, that line cannot reasonably be drawn between testing for cause and testing without cause." Id. at 2488.
 
 
 14
 The Court noted that the difference between Conrail's past practice of testing for cause and its new proposal to test all employees might be significant to the merits of the dispute, however, and emphasized in conclusion that did not seek to "minimize any force in the Union's arguments" in arbitration, but was holding merely that "Conrail has met the light burden" of showing that its interpretation of its contractual rights was "arguably justified." Id. at 2489.
 
 
 15
 In this case, SEPTA previously implemented drug testing in post-accident, suspicion-based, and transfer and promotion contexts without serving section 6 notice on the unions. See 863 F.2d 1123. The Court's opinion in Consolidated Rail leaves us little room but to conclude that the addition of random testing to these drug testing programs constitutes an issue "arguably" covered by the implied terms of the parties' agreement as established by past practice. In light of the Court's opinion in Consolidated Rail, we now conclude that the dispute over the addition of random drug testing is a minor dispute subject to the exclusive jurisdiction of the arbitral board. We will therefore vacate the status quo injunction issued by the district court and will remand this case to that court with instructions to dismiss the unions' claims under the RLA for lack of subject matter jurisdiction.
 
 IV.
 
 16
 For the reasons stated above, we will affirm that portion of the district court's judgment upholding the constitutionality of SEPTA's random testing program; we will vacate the district court's injunction against implementation of such testing with respect to employees covered by the RLA and will remand this case to the district court with instructions to dismiss the unions' claims under the RLA for lack of subject matter jurisdiction.
 
 
 
 [1]
 SEPTA did not pursue our invalidation of its return-to-work testing before the Supreme Court, nor does it raise the issue before us now. Therefore, only the random testing program is now before us