**TRANSPORT WORKERS UNION OF PHILADELPHIA, LOCAL 234**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

Civ. A. No. 87–0389.

United States District Court, E.D. Pennsylvania.

March 15, 1991.

Michael Brodie and Luis P. Diaz, Sacks, Basch, Brodie & Sacks, Philadelphia, Pa., for plaintiff.

Richard S. Meyer, John F. Smith, III, Dilworth, Paxson, Kalish & Kauffman, and Stefan Presser, ACLU, Philadelphia, Pa., for defendant.

## MEMORANDUM

LUDWIG, District Judge.

On July 2, 1990 plaintiff Transport Workers Union of Philadelphia, Local 234 moved for reconsideration of an order entered June 18, 1990 and to alter judgment. Fed. R.Civ.P. 59(e). The order denied plaintiff TWU's motion to file a third amended complaint by adding to the action six named individual plaintiffs and their damage claims, together with a class of plaintiffs to be represented by them. This memorandum explains the reasons for the denials of the original motion as well as the motion for reconsideration and to alter judgment.

### I.

On January 21, 1987 TWU began this action by filing a complaint to enjoin defendant SEPTA's newly announced random drug and alcohol testing program, known as 87–1. On February 9, 1987 a preliminary injunction was granted.

On July 28, 1987 TWU moved for leave to file a second amended complaint, which was granted over objection. On October 28, 1987 TWU filed the second amended complaint, claiming damages and other relief on behalf of the union membership. On December 29, 1987 this complaint was dismissed as moot after TWU, in the face of SEPTA's motion for judgment on the pleadings, conceded its lack of standing.

On January 19, 1988 the preliminary injunction of February 9, 1987 was dissolved, and SEPTA's random testing program, as revised, was allowed to proceed. *See Transport Workers', Local 234 v. SEPTA,* 678 F.Supp. 543 (E.D.Pa.1988). SEPTA's additional program for return-to-work testing, 87–2, was permanently enjoined.[1] *Id.* Cross-appeals were taken, and on December 28, 1988 our Court of Appeals affirmed. *See Transport Workers', Local 234 v. SEPTA,* 863 F.2d 1110 (3d Cir.1988). In the meantime, in March, 1988, counsel were notified that this action had been placed in our court's civil suspense docket and closed for statistical purposes. On January 18, 1989 TWU moved for leave to file the third amended complaint. On February 27, 1989 SEPTA responded that the action was on appeal and in suspense and, therefore, the motion to amend should not be considered. At a conference on July 16, 1989, plaintiff's counsel commented that its motion for leave to file a third amended complaint, which had been filed on January 18, 1989, was still outstanding. *See* Pltf's Response to Defendant's Opposition at 1. On September 8, 1989 SEPTA filed its opposition to the motion, the action having been remanded by the Court of Appeals on September 1, 1989. *See Transport Workers', Local 234 v. SEPTA,* 884 F.2d 709 (3d Cir.1989).

The appellate history of the action following the Court of Appeals affirmance is that on March 8, 1989 SEPTA petitioned the Supreme Court for certiorari as to the enjoining of 87–2 and also as to another adverse ruling involving the Railway Labor Act.[2] The latter issue did not affect TWU.

1. The return-to-work testing program, 87–2, was not ruled on when 87–1 was preliminarily enjoined. The first ruling on 87–2 was the permanent injunction. The statement in this court's memorandum of January 19, 1988 that 87–2 was preliminarily enjoined is incorrect. *Transport Workers', 678 F.Supp. at 546.*

2. On February 16, 1989 the Court of Appeals stayed the issuance of its mandate. Fed. R.App.P. 41(b). The effect of SEPTA's timely

On March 14, 1989 TWU and SEPTA entered into a new collective bargaining agreement in which they settled this action *inter se*. *See* D & A Side Letter No. 1, initialed 3/1/89. As a result, SEPTA withdrew the return-to-work issue from its certiorari petition. When this occurred, no appellate issue affecting TWU remained outstanding. *See* Pltf's Response to Defendant's Opposition at 3–4. On April 10, 1989 plaintiff United Transportation Union cross-petitioned for certiorari as to 87–1. On June 26, 1989 the Supreme Court granted SEPTA's certiorari petition and UTU's cross-petition, vacated the order of the Court of Appeals and remanded in light of two recent Supreme Court decisions affecting the application of the Railway Labor Act. *SEPTA v. Transport Workers', Local 234*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 560 (1989). The Court of Appeals subsequent opinion, vacating this court's Railway Labor Act injunction of 87–1, expressly did not consider return-to-work testing under 87–2. "SEPTA did not pursue our invalidation of its return-to-work testing before the Supreme Court, nor does it raise the issue before us now." *Transport Workers'*, 884 F.2d at 710 n. 1. The Court of Appeals remanded to this court to dismiss the railroad unions' claims under the Railway Labor Act for lack of subject matter jurisdiction. *Id.*

The settlement between TWU and SEPTA of March 14, 1989 included three letter agreements in addition to the new collective bargaining agreement. TWU agreed to accept 87–1 as revised in the so-called "Integrated Program" and not to contest the Court of Appeals' affirmance of this court's refusal to enjoin such random testing. In exchange, SEPTA agreed to give up return-to-work testing, and to withdraw that aspect of its certiorari petition. One side letter concerns pending arbitrations of individual cases and expresses the desire of both parties to resolve these disputes utilizing their new agreement retrospectively. It was agreed, however, that the "provisions of new [agreement] shall apply prospectively only and no such provision shall be grounds for setting aside or mitigating the penalty in any past or pending grievance or arbitration case." D & A Side Letter No. 3, initialed 3/1/89. The settlement papers do not refer to TWU's motion for leave to file a third amended complaint or its motion for counsel fees.[3]

The third amended complaint, predicated on constitutional violations via 42 U.S.C. § 1983, relates to the following categories of SEPTA employees: (1) those who were discharged under SEPTA order 85–1 for positive test results;[4] (2) those whose tests under 85–1 and 87–1 were negative; (3) those discharged under 85–1 for refusal to be tested; (4) those discharged under 87–2 for positive test results; (5) those tested under 87–2 whose results were negative; and (6) those who refused testing under 87–2 and were discharged. Each of the six named plaintiffs is alleged to come within one of these categories, which on a class basis, is comprised of an estimated 50 or more claims of employees or former employees.[5]

---

petitioning for certiorari was to continue the stay until final disposition by the Supreme Court.

3. On December 11, 1989 the counsel fees issue was settled.

4. SEPTA order 85–1 prohibited reporting for duty with the "presence of intoxicants or controlled substances ... in his/her system." It permitted testing of an employee "suspected" of being in violation, and made it a basis for discharge to refuse to be tested.

5. The § 1983 actions for the six named proposed class representatives accrued on:
   Class (1) Whit Jones—September, 1987;
   Class (2) Horace Jordan—January 30, 1988;
   Class (3) Reginald Monte—September 8, 1987;
   Class (4) Ellis Brown—between February 3, 1987 and
   January 19, 1988;*
   Class (5) Nellie Alexander—between February 3, 1987 and
   January 19, 1988;*
   Class (6) Arthur Hoyte—March 30, 1987.
   *See* Third Amended Complaint at ¶¶ 4–15.
   * The proposed third amended complaint does state the test dates for Class (4) and (5) representatives Brown and Alexander. *See* Third Amended Complaint at ¶¶ 11–13. Both claims must have accrued between February 3, 1987, when 87–2 was promulgated, and January 19, 1988, when 87–2 was permanently enjoined.

In its motion for leave to amend, TWU notes that under Fed.R.Civ.P. 15(a) "leave shall be freely given when justice so requires." Liberality is the clear decisional theme. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). TWU emphasizes the representational nature of the defect in the second amended complaint, and that SEPTA was on notice of the substantive claims. *See* Motion at 6. Moreover, it contends a public employer's drug testing program is "[b]y its very nature, ... a class suit involving class-wide wrongs." *Burka v. N.Y. City Transit Auth.,* 110 F.R.D. 595, 600 (S.D.N.Y.1986).

SEPTA's opposition is two-fold—untimeliness and lack of standing to sue of the individual plaintiffs. It contends that the litigation was concluded by the Court of Appeals' decision of September 1, 1989 following remand from the Supreme Court. *Transport Workers',* 884 F.2d at 713. Nothing at that point was left to be amended. It also asserts that once this court's order was appealed and the Court of Appeals rendered its decision, the motion to amend was prejudicially belated. As to the six proposed individual plaintiffs, it challenges their standing both as claimants and class representatives inasmuch as all of their individual labor disputes were settled with SEPTA by TWU acting for them.

In reply, citing *Adams v. Gould, Inc.,* 739 F.2d 858 (3d Cir.1985), TWU urges that the motion to amend need not be denied and that the factors to be considered militate in favor of allowing the amendment. As to individual plaintiffs' standing to sue, it notes that their labor settlements did not, as such, cutoff or discharge their constitutional claims. *See Labov v. Lalley,* 809 F.2d 220, 223 (3d Cir.1989). In support of plaintiff's standing, TWU also points out this argument was rejected in an action brought by a former SEPTA employee— and TWU member—alleging the unconstitutionality of a drug test and his loss of employment. *See Bolden v. SEPTA,* 1989

WL 126239 at 2 (E.D.Pa. Oct. 20, 1989) (denying summary judgment on issue of union settlement constituting accord and satisfaction).

II.

Federal Rule of Civil Procedure 15(a) provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave to amend shall be freely given when justice so requires.

"This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Adams v. Gould,* 739 F.2d at 864. *See Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230. "The court may also refuse to allow an amendment that fails to state a cause of action." *Adams v. Gould,* 739 F.2d at 864.[6]

██ Delay alone is generally not enough to deny leave to amend. *See Merican, Inc. v. Caterpillar Tractor, Inc.,* 596 F.Supp. 697, 705 (E.D.Pa.1984).

Rather, the moving party's delay must be coupled with an additional consideration, such as prejudice to the opposing party, before a court may deny leave to amend. *Boileau [v. Bethlehem Steel Corp.,* 730 F.2d 929, 939 (3d Cir.1984)]; *Johnson v. Trueblood,* 629 F.2d 287, 294 (3d Cir.1980). Indeed, prejudice to the non-moving party is considered the "touchstone" for the denial of leave to amend. *Cornell [& Co. v. Occupational Safety and Health Review Commission,* 573 F.2d 820, 823 (3d Cir.1978)]. As a practical matter, the longer the moving party delays in seeking leave to amend, the more likely it is that the nonmoving

---

**6.** Although SEPTA argues that the individual plaintiffs lack standing, the fact record is insufficient to determine the effect of their grievance settlements on their § 1983 claims. *See Bolden,* 1989 WL 126239 at 2.

party has suffered prejudice in some way. *See Advocat v. Nexus Industries, Inc.*, 497 F.Supp. 328, 331 (D.Del.1980).

*Merican*, 596 F.Supp. at 705.

However: "[U]nder a theory analogous to laches, delay can itself be evidence of bad faith justifying denial of leave to amend." *Adams v. Gould*, 739 F.2d at 868. *See McCarthy v. PaineWebber*, 127 F.R.D. 130 (N.D.Ill.1989); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1488 at 691–92 (1990); 3 Moore's Federal Practice ¶ 15.08[4] at 15–76.

■ The reason for refusing to grant leave to amend was the movant's protracted failure to file and proceed with the motion. Given the circumstances of this case, this amounted to bad faith. After TWU conceded its lack of standing in December, 1987, this action was decided on the merits and a permanent injunction was entered on January 19, 1988. That decision invalidated 87–2. On December 28, 1988 our Court of Appeals affirmed. Not until the next month, almost exactly one year after this action was finally decided in our court, did TWU submit its motion for leave to file the third amended complaint. By that time there was no reason to believe either TWU or the proposed individual plaintiffs still had in mind going ahead in this lawsuit with their 87–2 claims and class action.

At the hearing held on December 29, 1987, TWU had withdrawn its second amended complaint after recognizing that it lacked standing to assert individual claims on behalf of union members or to assert a class action for them. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock*, 477 U.S. 274, 282–84, 106 S.Ct. 2523, 2529, 91 L.Ed.2d 228 (1986); *Move v. United States*, 555 F.Supp. 684, 686–87 (E.D.Pa.1983). As plaintiff's motion for leave to file a third amended complaint acknowledged, "plaintiff's stated intention [at that hearing was] to bring certain damage claims on behalf of individual members and plaintiff's stated intention again [was] to amend its Complaint, this time to include individual representatives as part of a class action, thus remedying the 'standing' defect." Motion at 2.[7]

However, this intention was not implemented during the time in which this case was brought to a conclusion in this court or even while it was pending in the Court of Appeals.[8] In support of reconsideration it is argued that "since the Statute of Limitations has expired on all of these claims, hundreds of transit workers tested by SEPTA will be forever denied their day in Court." Pltf. mem. at 1. Nevertheless: "When there has been an apparent lack of diligence [in filing for leave to file an amended complaint], the burden shifts to the [plaintiff] to prove that the delay was due to excusable neglect." *Chitmacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982). *See McCarthy*, 127 F.R.D. at 134.

No explanation at all has been given for the extended delay in filing for leave to amend. As noted, this period covered both

---

7. The phraseology—that plaintiff TWU would move to amend to bring an action on behalf of individual members and to include such individuals as class representatives—seems to leave open the standing question that the proposed amendment was intended to avoid. As exemplified by the union's subsequent joinder by SEPTA as a third-party defendant in *Bolden v. SEPTA*, it may also implicate a conflict of interest problem. *See* Pa.Rules of Professional Conduct 1.9. In *Bolden*, the jury returned a plaintiff's verdict of $285,000 against SEPTA and relieved TWU of liability.

Here, those issues, standing and conflict of interest, are not considered.

8. The claims of one of the six individuals eventually proposed to be a class representative had not accrued in December, 1987 when plaintiff stated it intended to amend the complaint to allege individual and class action § 1983 claims. It is unclear when the claims of two other individuals accrued. The second amended complaint did not specify any individual claims. In *Adams v. Gould*, the amending plaintiffs were already parties of record.

this court's and the Court of Appeals dispositions of the case. Thereafter, the motion for leave to amend was held in abeyance another eight months, until September, 1989. However, as of March 1989, there was nothing as between TWU and SEPTA that remained on appeal.[9] *See* 9 Moore's Federal Practice ¶ 203.11 at 3–54 (1990) ("[I]f an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved with the appeal").[10]

The potential limitations bar resulting from disallowance of the amendment makes this a difficult ruling.[11] However, even while this motion was pending, individual union members could have brought their own timely § 1983 actions, *see, e.g.,* *Bolden,* 1989 WL 126239, and the class actions could have been instituted.[12] Instead, nothing was done, and no reason or excuse has been offered for allowing defendant—and this court—to conclude that there were no other claims to be encompassed in this action.

Plaintiff's motion for reconsideration and to alter judgment will be denied.

---

**9.** TWU did not appeal the Court of Appeal's affirmance in January, 1989 of the dissolution of the preliminary injunction of 87–1. As part of the settlement with TWU, SEPTA withdrew 87–2 from its appeal to the Supreme Court in March, 1989. At that point, none of the issues before the Supreme Court or the Court of Appeals involved TWU and SEPTA.

**10.** The union must have been mindful of the delay in light of the ongoing proceedings in *Bolden v. SEPTA and TWU,* which was filed November 30, 1988.

**11.** The applicable limitations period for plaintiff's § 1983 claims is two years. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Rose v. Bartle,* 871 F.2d 331, 347 (3d Cir.1989); *Bartholomew v. Fischl,* 782 F.2d 1148, 1155 (3d Cir.1986).

**12.** SEPTA promulgated 87–2 on February 3, 1987. Plaintiff raised the statute of limitations problem for the first time in its petition for reconsideration or to alter judgment.