

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-1995

# Dykes v SEPTA

Precedential or Non-Precedential:

Docket 95-1032

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Dykes v SEPTA" (1995). *1995 Decisions.* Paper 286.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/286

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-1032

———————

JOSEPH G. DYKES,

Appellant

vs.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY;
TRANSPORT WORKERS UNION OF PHILADELPHIA, LOCAL 234,
TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 94-cv-05478)

———————

Argued
September 12, 1995
Before:  MANSMANN, SCIRICA and NYGAARD, Circuit Judges.

(Filed November 7, 1995)

———————

H. Francis deLone, Jr., Esquire (Argued)
1717 Arch Street
3754 Bell Atlantic Tower
Philadelphia, PA  19103

   COUNSEL FOR APPELLANT

Nicholas J. Staffieri, Esquire (Argued)
SEPTA
Legal Department
1234 Market Street
5th  Floor
Philadelphia, PA  19107-3724

   COUNSEL FOR APPELLEE SEPTA

Michael L. Brodie, Esquire (Argued)
Robert W. Kosman, Esquire
Brodie & Rubinsky
924 Cherry Street

Suite 400
Philadelphia, PA  19107

   COUNSEL FOR TRANSPORT WORKERS UNION
                 —————————

                OPINION OF THE COURT
                 —————————

MANSMANN,  Circuit Judge.

         In September, 1994, bus driver Joseph G. Dykes filed
suit pursuant to 42 U.S.C. § 1983 against the Southeastern
Pennsylvania Transportation Authority ("SEPTA") and the Transport
Worker's Union of Philadelphia, AFL-CIO, Local 234 ("Local 234").
In his two-count complaint, Dykes alleged that his constitutional
rights were violated when his SEPTA supervisors asked him to
submit to body fluids testing in the absence of reasonable
suspicion and that SEPTA and Local 234 conspired to deprive him
of due process in connection with the grievance proceedings which
followed his discharge.

         This appeal requires that we determine whether the
district court erred in dismissing Dykes' complaint for failure
to state a cause of action.  In making this determination we
revisit and extend our opinion in Bolden v. SEPTA, 953 F.2d 807
(3d Cir. 1991), to conclude that, pursuant to the collective
bargaining agreement, whether reasonable suspicion exists in a
given case is not a question of law under the Fourth Amendment,
but is instead a question of fact to be resolved during the
course of the grievance/arbitration process.  We also hold that
where an adequate grievance/arbitration procedure is in place and
is followed, a plaintiff has received the due process to which he

                          2

is entitled under the Fourteenth Amendment.  Because we conclude that Dykes has failed to allege a constitutional violation cognizable under 42 U.S.C. § 1983, we will affirm the orders of the district court.

## I.

The allegations set forth in the complaint are straightforward.[1]  On July 13, 1993, Dykes, a bus driver employed by SEPTA and represented by Local 234, drove a SEPTA bus along his regular route.  At some point during the trip, SEPTA supervisors boarded the bus, ordered Dykes out of the driver's seat, and asked that he submit to body fluids tests designed to detect the presence of drugs and alcohol.  Dykes refused to submit to those tests, and, as a result, was fired.  Following Dykes' discharge, Local 234 pursued three levels of grievance proceedings.  At each stage, it was determined that the tests requested were based on reasonable suspicion and Dykes' discharge was upheld.  The union did not submit the matter to arbitration.

On September 6, 1994, Dykes filed a civil complaint consisting of two counts, both of which were based upon 42 U.S.C. § 1983.  In Count One, Dykes alleged that SEPTA deprived "him of

---

[1]    In reviewing the grant of a motion to dismiss for failure to state a cause of action, we apply the same standard as did the district court, accepting the allegations of the complaint as true and construing those allegations, in a light most favorable to the plaintiff. Wisniewski v. Johns Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985).  This standard does not vary where the action is brought pursuant to 42 U.S.C. § 1983. Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192 (3d Cir. 1993).

3

his Fourth Amendment Right to be free from unreasonable searches and seizures."  He explained that "[t]he supervisors who ordered [him] to submit to a body fluids test had no reasonable basis for suspecting that [he] was under the influence of drugs or alcohol."  Count Two of the complaint, directed at SEPTA and Local 234, alleged that Dykes was deprived of a property interest in his employment without due process of law as required by the Fourteenth Amendment.  Specifically, Dykes challenged the role of SEPTA and Local 234 in the post-termination grievance proceedings.  Local 234 was said to have "allow[ed] SEPTA . . . to get away with what [the Union] knew to be violations of plaintiff's due process rights even though [the Union] had the power to prevent such violations and a duty to try to do so."  Dykes also claimed that Local 234 failed to obtain and present meaningful evidence and discouraged Dykes from presenting evidence in his own behalf.  The Union was said to have "aided and abetted" and "acted in concert with SEPTA in effecting the deprivation of plaintiff's due process rights."

On October 7, 1994, SEPTA filed a Motion to Dismiss Plaintiff's Complaint pursuant to F.R.Civ.P. 12(b)(6).  Local 234 filed a similar motion on November 14, 1994.  By Order dated December 19, 1994, the district court dismissed Dykes' complaint as to SEPTA and, on December 29, 1994, entered an order dismissing Count II of the complaint.[2]  This appeal followed.

_____

[2]     The district court did not issue opinions explaining the deficiencies in the complaint.

4

The sole issue before us concerns the adequacy of the complaint. In order for a plaintiff to state a cause of action under 42 U.S.C. § 1983, he must allege "that the defendant has deprived him of a right secured by the `Constitution and laws' of the United States . . . and that the defendant deprived him of this Constitutional right `under the color of any statute, ordinance, regulation, custom or usage of any State or Territory'." Adickes v. S.H. Kress & Co., 398 U.S. 144. 150 (1970). We evaluate each count of Dykes' complaint with reference to this standard.

## II.

In Count One, Dykes alleged that "the actions of defendant SEPTA . . . deprived him of his Fourth Amendment right to be free from unreasonable searches and seizures" and that "in denying [Dykes] his Fourth Amendment rights, defendant SEPTA – a state agency – was acting under color of state law." In addition, Dykes alleged that "Defendant [Local 234] is a labor organization which . . . –– at all times relevant to this action –– was [Dykes'] exclusive representative . . . for the purposes of collective bargaining and pursuing grievances with respect to the terms and conditions of . . . employment"; further, that SEPTA had "no reasonable basis for suspecting that [he] was under the influence of alcohol and that the proposed search which deprived [him] of his Fourth amendment Rights [was] done in accordance with policies or practices of SEPTA. . . ."

SEPTA filed a motion to dismiss, attaching a copy of the 1992–1995 collective bargaining agreement ("CBA") made between SEPTA and Local 234[3]. Article XII § 1203.I(a) of the CBA governs when drug and alcohol testing of SEPTA personnel based upon reasonable suspicion may be undertaken and defines what constitutes reasonable suspicion.[4] SEPTA asserts that the issue

[3] Dykes argues that we may not look to the CBA in reviewing a 12(b)(6) motion. This argument ignores our decision in Pension Benefits Guaranty Corp. v. White Consolidated Industries, Inc.. There, we held that

> A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.

998 F.2d at 1196 (citations omitted). This holding is not inconsistent with "Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matter outside the pleadings . . . . When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." Id. at 1196–97.

Clearly, this matter falls within the rule announced in Pension Benefit Guaranty as Dykes' complaint, while framed in constitutional terms, grows out of an alleged violation of the CBA.

[4] The CBA, at Article XII, § 203, provides as follows:

> [SEPTA] may require an employee to submit to drug and alcohol testing on a reasonable suspicion basis where a supervisor trained in the detection of drug and alcohol use can articulate and substantiate specific behavioral performance or contemporaneous physical indicators of probable drug or alcohol use. [SEPTA] and the Union understand such indicators to include such of the following as would reasonably lead the

6

of whether reasonable suspicion exists is an issue of contract interpretation which must be addressed pursuant to the grievance process.  Accordingly, Dykes allegedly is bound by the finding, made in each step of the grievance process, that SEPTA acted on reasonable suspicion in requesting that he submit to drug and alcohol testing.  The crux of these contentions is that Dykes was not subjected to an unreasonable search and seizure within the meaning of the Fourth Amendment or, consequently, within the scope of section 1983.

A.

Cases interpreting the scope of the Fourth Amendment establish that drug testing of public employees may raise search and seizure issues.  Skinner v. Railway Labor Executives' Assoc., 489 U.S. 602 (1989); National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989).  It is equally clear that the Fourth Amendment applies only to unreasonable searches and seizures. Skinner, 489 U.S. at 619.  What is reasonable "depends on all of

---

supervisor to conclude that drug or alcohol use is a contributory factor:  Behavior or actions which differ from normal behavior or actions under the circumstances, inappropriate or disoriented behavior and incidents involving serious violations of safety or operating rules and practices.

Article XII, § 1203II(a) provides that "[f]ailure to submit to a drug and alcohol test properly required . . . is a dischargeable offense."  The grievance procedure designed to test the circumstances surrounding drug and alcohol testing is set forth in Article II of the CBA.  While Article XII does not refer specifically to the grievance procedure detailed in Article II, the parties agree that the grievance procedures applied to the situation presented here.

7

the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Id. Courts are required to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983).

The Supreme Court has stated that the very fact of individualized suspicion goes far toward making a search reasonable where the government has a legitimate interest in confirming the alleged violation. See Skinner, 489 U.S. at 623; National Treasury Employees Union v. Yeutter, 918 F.2d 968, 975 (D.C. Cir. 1990).

In this case, where Dykes operated a transit bus, there is no question that SEPTA had a legitimate interest in developing and administering a drug and alcohol testing program. In fact, in Transport Workers' Local 234 v. SEPTA, 884 F.2d 709 (3d Cir. 1988), we held that even random testing of SEPTA drivers was constitutionally justified given "SEPTA's extensive evidence of a severe drug abuse problem among its operating employees." Id. at 711.

What we confront here, then, is not a policy alleged to be unconstitutional; the parties agree that the SEPTA suspicion-based testing policy is reasonable for purposes of the Fourth Amendment. Dykes alleges, instead, that the policy was not followed; SEPTA sought to have him submit to testing in the absence of reasonable suspicion. It is SEPTA's violation of its

8

own policy that allegedly renders the proposed search unreasonable.

B.

Ultimately, the question of whether a particular search is reasonable for purposes of the Fourth Amendment is not a question of fact. "Unlike a determination of `reasonableness' in ordinary tort cases and some other contexts, this balancing process presents a question of law. . . ." Bolden v. SEPTA, 953 F.2d 807, 822 (3d Cir. 1991), cert. denied, 112 S. Ct. 2281 (1992). In order to resolve the reasonableness question presented here, we must first examine the more narrow question of whether there was reasonable suspicion underlying SEPTA's request that Dykes submit to testing. If there was reasonable suspicion, and SEPTA, therefore, complied with the terms of its drug and alcohol testing policy, there is no Fourth Amendment issue; the policy, evaluated against the background of precedent, is reasonable in the broad constitutional sense. If SEPTA's request that Dykes be tested was founded on reasonable suspicion, Count One of Dykes' complaint was properly dismissed.

The dispositive issue in this case is, therefore, whether SEPTA had reasonable suspicion upon which to test Dykes. Relying on our en banc decision in Bolden v. SEPTA, 953 F.2d 807 (3d Cir. 1991), we conclude that this question is one of fact to be determined during the course of the grievance process and that the finding reached during this process is binding upon the reviewing court.

9

In order to explain this conclusion, we explore the facts of <u>Bolden</u> in some detail. In 1986, Bolden, a SEPTA custodian, was involved in an altercation with a SEPTA bus driver and was discharged. This discharge was pursued through three levels of grievance proceedings with Bolden represented by Local 234. In June, 1987, an arbitration panel ruled that Bolden was entitled to reinstatement and back pay.

Between the time that Bolden was discharged and the time that he was to return to work, SEPTA unilaterally instituted a new drug testing policy which required that employees returning to work after certain absences be tested for drugs. Unions representing SEPTA workers challenged the legality of this return-to-work testing. The district court found this type of testing unconstitutional, <u>Transport Workers' Local 234 v. SEPTA</u>, 678 F. Supp. 543 (E.D. Pa. 1988), and we affirmed. <u>Transport Workers' Local 234 v. SEPTA</u>, 863 F.2d 1110 (3d. Cir. 1988), <u>vacated</u>, 492 U.S. 902, <u>reaffirmed</u>, 884 F.2d 709 (3d Cir. 1989).

Commenting on return-to-work testing, we wrote:
> SEPTA must justify its return-to-work testing on the basis of some particularized suspicion. It has, however, failed to present any evidence that the employees returning to work present some unique risk directly related to drug or alcohol use. Thus, SEPTA has not shown that this aspect of its program is initially justified or that testing of all employees returning after an absence for whatever cause has any relationship to the articulated need for the program.

863 F.2d at 1122.

10

While the Unions' suit was pending, but prior to the court decisions in this matter, Bolden was reinstated. Under the testing policy then in force, Bolden submitted to a return-to-work drug test. He tested positive for marijuana and was again discharged. Once again, the Union initiated grievance proceedings on Bolden's behalf. At the end of the three-step process but prior to arbitration and prior to resolution of the pending suit challenging return-to-work drug testing, SEPTA and the Union reached a settlement regarding Bolden's second discharge. Under the terms of the settlement, Bolden was authorized to return to work provided that he

> (1) enter SEPTA's Employee Assistance Program and present evidence of successful substance abuse treatment, agree to an "aftercare program," submit to a body fluids test before returning to work, and remain subject to unannounced follow-up tests or (2) submit to a body fluids test and, if he passed, meet with a substance abuse counsellor and remain subject to unannounced follow-up testing for six months.

Id. at 811. Under either settlement option, Bolden was required to submit to body fluids testing. Bolden declined to return to work on these terms and filed an action pursuant to 42 U.S.C. §1983, alleging violation of his Fourth and Fourteenth Amendment rights. Following a jury trial, judgment was entered for Bolden on the Fourth Amendment claim.

On appeal, we affirmed the order of the district court with respect to the Fourth Amendment claim, holding first that return-to-work testing could not be justified under the balancing test outlined in Skinner: "SEPTA has no special need to subject

11

Bolden to a drug test based on any dangers presented by his job." Bolden, 953 F.2d at 824. We also rejected SEPTA's claim that return-to-work testing was reasonable under the Fourth Amendment because Bolden had, upon his original reinstatement, voluntarily consented to drug testing as a matter of law. We found, however, "greater merit in SEPTA's reliance on the settlement it reached with local 234 following Bolden's discharge for drug use." Id. at 825.

While we held that the grievance settlement did not preclude Bolden's section 1983 claim under the doctrines of res judicata or collateral estoppel, we found that the grievance settlement was binding upon Bolden because "a union such as Bolden's may validly consent to terms and conditions of employment, such as submission to drug testing, that implicate employees' Fourth Amendment rights." Id. at 826.

We noted that unions are given statutory authority to make binding contractual commitments regarding the terms and conditions of employment. "Under the Pennsylvania Public Employees Relations Act (PERA), Pa. Stat. tit. 43 § 1101.606 (Purdon 1991), a union is the exclusive collective bargaining representative for all of the employees in the unit, and therefore the union, in entering into a collective bargaining agreement, may agree to terms and conditions that are contractually binding on all of the employees." Id. We also reviewed caselaw generated by the Supreme Court and our sister courts of appeals recognizing that "a union's authority as exclusive bargaining agent necessarily entails some restrictions

12

on constitutional rights that individual employees would otherwise enjoy."  Id.  Finally, we recognized that "[t]he National Labor Relations Board has held that drug testing is a mandatory subject of [collective] bargaining."  953 F.2d at 827.

Most importantly for purposes of reviewing Dykes' claims, we held that certain factual questions may be conclusively determined through collective bargaining, even where resolution of those questions could "have important implications under the Fourth Amendment."  Id. at 828.  We also made clear that determination of these factual issues precludes their being litigated further:

> If individual public employees may litigate such questions despite the resolution reached through collective bargaining, the utility of collective bargaining with respect to drug testing would be greatly diminished.  In sum, we conclude that a public employee union acting as exclusive bargaining agent may consent to drug testing on behalf of the employees it represents.

Id.  This consent may be explicit, i.e., an express term in the collective bargaining agreement, or implicit, derived from practice, usage and custom.  "[I]f the union agrees, or if binding arbitration establishes, that the collective bargaining agreement impliedly authorizes drug testing, individual employees [and the court] are bound by this interpretation unless they can show a breach of the duty of fair representation."  Id.  When we applied these principles to Bolden's case, we concluded that when the union, as Bolden's exclusive bargaining agent, pursued grievance procedures and ultimately entered into a settlement

13

with SEPTA which mandated drug testing for Bolden, "the settlement had the same effect under labor law and under the Fourth Amendment as if Bolden himself consented to such future drug testing." 953 F.2d at 829. Bolden, even though he never personally ratified the settlement, was bound by its terms and could not recover damages for the period of time following the settlement.

Our holding in Bolden establishes that even where a drug testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity where his union and his employer agree to operate under that policy.

C.

While Dykes' case differs from Bolden in some significant respects, we believe that Bolden sets forth the principles which govern the outcome of this case. Unlike in Bolden, the issue here is not SEPTA's policy per se. As we have explained, the policy, as written, raises no Fourth Amendment concerns. The issue for Dykes is whether the policy was followed, i.e., was there reasonable suspicion as required by the CBA? The issue for us is even more basic: is the existence of reasonable suspicion a question of law for the courts or one of fact appropriately resolved in grievance proceedings?

We believe that under the CBA, both in the details of the drug testing policy where reasonable suspicion is defined and in the applicable grievance procedures, it should have been clear

14

to all parties that this question would be considered and resolved in the grievance proceedings. At oral argument, counsel for SEPTA represented, without challenge, that the question of reasonable suspicion is regularly considered and resolved through the grievance and arbitration process. We view the issue of reasonable suspicion as one of fact which, like the question of which jobs are "safety-sensitive," is best left to resolution in the grievance process.

In sum, we agree with SEPTA that whether reasonable suspicion exists in a given case is an issue involving interpretation of the CBA and that we "must defer to this interpretation of the agreement unless the employee can show that the union has breached its duty of fair representation. . . ." Id. There has been no such allegation here.

Because the question of reasonable suspicion was not resolved in Dykes' favor in any step of the grievance process, we find that the proposed search was reasonable. The allegations in the complaint, therefore, are not sufficient to support a Fourth Amendment claim cognizable under 42 U.S.C. § 1983.

III.

We next address the adequacy of the claims set forth in Count II of Dykes' complaint. This count, directed against both SEPTA and Local 234, alleges that Dykes was deprived of a property interest in his job without due process of law as required by the Fourteenth Amendment when SEPTA failed to accord him "a meaningful opportunity to be heard with respect to the

15

discharge."  Local 234 is alleged to have "aided and abetted and acted in concert with SEPTA in effecting the deprivation of Dykes' due process rights."[5]  We will not focus upon whether the allegations set forth in Count II are sufficient to allege a conspiracy bringing Local 234, as a private actor, within the ambit of 42 U.S.C. § 1983.  We need not reach the issue of conspiracy because we conclude that Dykes' complaint fails to allege a cognizable violation of his due process rights.

A.

In order to state a section 1983 claim based on the Fourteenth Amendment, Dykes must allege that he was deprived of a property interest under color of state law without due process. For purposes of our analysis, we assume that Dykes has alleged facts sufficient to establish that he had a contractual employment relationship with SEPTA and that the relationship created a property interest subject to Fourteenth Amendment protection.  We also assume that Dykes was deprived of that interest when he was discharged for failing to submit to body fluids testing.  Our focus, then, rests upon the question of due process.  "We must bear in mind that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause."  Kremer v. Chemical Construction Corp., 456 U.S. 461, 483 (1982).  "[D]ue process is

---

[5]     Dykes does not claim that the procedures established are inadequate per se or that additional procedures are required. The thrust of his complaint is that SEPTA and Local 234 acted to make a "sham" of the procedures in place.

16

flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (citation omitted). The complaint establishes that Dykes had available to him a three step grievance process which could have been followed by arbitration. The grievance process was exhausted and, when the union determined not to carry the matter to arbitration, Dykes did not pursue a state court action alleging breach of the duty of fair representation.

B.

We have held that under the Pennsylvania Public Employee Relations Act, 43 Pa. Stat. Ann. § 101.101 et seq., federal labor law governs a challenge to procedures followed in the termination of a public employee. See Crilly v. SEPTA, 529 F.2d 1355 (3d Cir. 1976). If a public employee believes that the grievance process was defective, he may seek relief available

> under state law. Once an employee establishes that a [U]nion has acted in bad faith towards its member[,] . . . the Court of Common Pleas sitting in equity may order completion of the arbitration procedure . . . . Under this procedure a wrongfully discharged employee receives precisely the treatment all the employees in the unit are entitled to under the collective bargaining agreement.

Martino v. T.W.U., Local 234, 505 Pa. 391, 409-410 (1984).

Where a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements "even if the hearing conducted by the Employer . . .

17

[was] inherently biased."  Jackson v. Temple University, 721 F.2d 931 (3d Cir. 1983).

In Jackson, a public employee filed suit pursuant to 42 U.S.C. § 1983 alleging that his due process rights were infringed by the biased nature of the grievance hearings conducted by Temple University following his discharge and by the Union's refusal to bring the matter to arbitration.  We affirmed the district court's dismissal of the section 1983 claim, agreeing with the district court that no precedent, "binding or otherwise," has "recognized a section 1983 action where a union has refused to take to arbitration an employee's claim against a public employer."  721 F.2d at 933 n.1.  We noted that

> [t]he Union, as the sole and exclusive
> bargaining representative had the ultimate
> power to make a fair and responsible
> determination as to whether it would invoke
> the arbitration proceeding available under
> the collective bargaining agreement.  The
> right to proceed to arbitration provided
> . . . an adequate due process safeguard even
> if the hearing conducted by the Employer
> earlier had been inherently biased.

Id. at 933.  Finally, we stated that, "[t]he right to arbitrate provided . . . essentially the same due process safeguards which would have been available through an unbiased hearing.  There is no evidence suggesting that the arbitration proceeding would have been biased. . . .  Therefore, there is no due process violation in this case."  Id. at 933 n.2.

Our opinion in Jackson was relied upon by our sister court in Armstrong v. Meyers, 964 F.2d 948, 951 (9th Cir. 1992).  There a discharged university employee filed suit pursuant to

18

section 1983, alleging that he had been deprived of property without due process of law.  In affirming a grant of summary judgment in favor of the defendants, the Court of Appeals for the Ninth Circuit held that, "A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, that those procedures satisfy due process." Id. at 950. The court then turned to the following balancing test established by the Supreme Court in Mathews v. Eldridge, 424 U.S. at 335.  In order to determine whether a particular procedure meets due process requirements, three factors must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Applying these factors in the public employee context, our sister court of appeals recognized that an employee's interest in retaining his job is "substantial."

> However, the risk of an erroneous determination in the grievance/arbitration procedure is not large, and the value of additional or substitute procedures is not great.  Grievance/arbitration procedures are a universally accepted method of resolving employment disputes, included in countless collective bargaining agreements.  Although [the] union could and did decide not to take [the employee's] claim to arbitration, it did so under a duty of fair representation, and may be sued for beach of that duty if its

19

> "conduct toward a member of the collective
> bargaining unit is arbitrary, discriminatory,
> or in bad faith."

964 F.2d at 950 (citation omitted). In holding that the grievance/arbitration procedures in place were adequate to meet the demands of due process, the court recognized "the strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees." Id. at 951.

We are convinced that the reasoning in Armstrong v. Meyers applies with equal force in this case. Even where, as here, a plaintiff alleges that the defendants acted in concert to deprive him both of a meaningful hearing and of arbitration, we believe that the administrative process in place has incorporated safeguards adequate to resolve these allegations in a manner consistent with the demands of due process.[6] Significantly,

---

[6] In so holding, we re-confirm our agreement with the many courts holding that grievance procedures outlined in collective bargaining agreements can satisfy due process requirements. See Wallace v. Tilley, 41 F.3d 296 (7th Cir. 1994) (grievance procedure outlined in collective bargaining agreement can satisfy due process even in cases where public employee has bee discharged); Buttitta v. City of Chicago, 9 F.3d 1198, 1206 (7th Cir. 1993) (due process satisfied where police officer had access to post-deprivation grievance procedure under collective bargaining agreement); Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (hearing rights available to discharged professor under the collective bargaining agreement fully satisfied procedural due process even where there were unsubstantiated claims of bias); Lewis v. Hillsborough Transit Authority, 726 F.2d 664, 667 (11th Cir. 1983) (per curiam), cert. denied, 469 U.S. 822 (1984) (grievance procedure, if utilized, could eliminate a constitutional violation); Ash v. Bd. of Educ. of Woodhaven School Dist., 699 F.2d 822, 827 (6th Cir. 1983) (grievance procedures satisfied minimum requirements of due process).

20

Dykes could have asked a court of common pleas to order arbitraton pursuant to the collective bargaining agreement, thereby assuring him of the due process to which he was entitled. Because he chose not to do so, Dykes is unable to prove a violation of 42 U.S.C. § 1983 by SEPTA or by Local 234. We conclude, therefore, that Count II of Dykes' complaint was appropriately dismissed for failure to state a cause of action.[7]

## IV.

Because we find that the district court properly applied Fed. R. Civ. P. 12(b)(6) in dismissing both counts of Dykes' complaint, we will affirm the orders of the district court.

---

[7] While Dykes elected to appeal the dismissal of the complaint rather than seek leave to amend under Fed. R. Civ. P. 15, this fact alone does not preclude amendment of the complaint. Dist. Council 47, American Federation v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986). This is not a situation, however, where the complaint has been dismissed for lack of specificity or some other readily curable defect. Given the facts of this case and the law as we have stated it, amendment of the complaint will not result in its being found sufficient to withstand a renewed motion under Fed. R. Civ. P. 12(b)(6).